Slip Op. 15 - 137

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────┐
│ SOLARWORLD AMERICAS, INC.,           │
│                                      │
│              Plaintiff,              │
│                                      │
│         v.                           │
│                                      │
│ UNITED STATES,                       │
│                                      │
│              Defendant.              │
│                                      │
└─────────────────────────────────────┘
```

Before: Donald C. Pogue,
         Senior Judge

Court No. 13-00007[1]

OPINION

[affirming the Department of Commerce's final determination in countervailing duty investigation]

Dated: December 11, 2015

Timothy C. Brightbill and Laura El-Sabaawi, Wiley Rein LLP, of Washington, DC, for the Plaintiff.

Melissa M. Devine, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for the Defendant.  Also on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.  Of counsel was Lisa Wang, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

**Pogue, Senior Judge:**  In this case, Plaintiff

SolarWorld Americas Incorporated ("SolarWorld") challenges the

United States Department of Commerce's ("Commerce")

---

[1] This case was previously consolidated into Consol. Ct. No. 13-00009, Order, June 12, 2013, ECF No. 37, at ¶ 3, but was subsequently severed therefrom, Order, Aug. 4, 2015, ECF No. 38; Order, Aug. 20, 2015, ECF No. 40.

determination, during the countervailing duty ("CVD")

investigation of crystalline silicon photovoltaic cells ("solar

cells") from the People's Republic of China ("PRC" or "China"),

to defer examination of two subsidy allegations until a

subsequent administrative review.[2]

        The court has jurisdiction pursuant to

Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended,

19 U.S.C. § 1516a(a)(2)(B)(i) (2012),[3] and 28 U.S.C.

§ 1581(c) (2012).

        As explained below, because the challenged agency

determinations are based on a reasonable reading of the record

evidence and free of error of law or judgment, and are therefore

not an abuse of the agency's discretion, Commerce's <u>Final</u>

---

[2] <u>See</u> SolarWorld's Mot. for J. on the Agency R.,
Consol. Ct. No. 13-00009, ECF Nos. 78 (conf. version) & 79
(pub. version) ("Pl.'s Br."); <u>[Solar Cells], Whether or Not
Assembled into Modules, from [China]</u>, 77 Fed. Reg. 63,788
(Dep't Commerce Oct. 17, 2012) (final affirmative countervailing
duty determination and final affirmative critical circumstances
determination) ("<u>Final Determination</u>") and accompanying Issues
& Decision Mem., C-570-980, Investigation (Oct. 9, 2012)
("<u>I&D Mem.</u>") cmt. 10 at 36-38.  The period of investigation
(POI") was January 1, 2010, through December 31, 2010. <u>[Solar
Cells], Whether or Not Assembled into Modules, from [China]</u>,
76 Fed. Reg. 70,966, 70,966 (Dep't Commerce Nov. 16, 2011)
(initiation of countervailing duty investigation) ("<u>Initiation
Notice</u>").

[3] Further citations to the Tariff Act of 1930, as amended, are to
the relevant provisions of Title 19 of the U.S. Code,
2012 edition.

<u>Determination</u> in this CVD investigation is sustained.

<strong>BACKGROUND</strong>

"A countervailing duty investigation shall be
initiated whenever [Commerce] determines, from information
available to it, that a formal investigation is warranted into
the question of whether the elements necessary for the
imposition of a duty under [19 U.S.C. § 1671(a)] exist."[4]  In
this case, Commerce initiated a CVD proceeding based on
SolarWorld's petition, which initially covered twenty-seven
separate Chinese government programs that SolarWorld alleged
provided countervailable subsidies to the respondents during the
POI.[5]  Thereafter, SolarWorld submitted additional allegations
regarding the aluminum extrusions and glass used to assemble
solar cells into solar panels or modules.  These latter two
allegations are the subject of this dispute.  Relevant
background with respect to each of these allegations is
presented below.

## I. Aluminum Extrusions

SolarWorld's initial petition included an allegation

---

[4] 19 U.S.C. § 1671a(a).

[5] <u>Initiation Notice</u>, 76 Fed. Reg. at 70,968-69; <u>see</u> 19 U.S.C.
§ 1671(a) (providing for the imposition of duties "equal to the
amount of the net countervailable subsidy").

that the Chinese government was providing ***primary*** aluminum to
producers of subject merchandise for less than adequate
remuneration.[6]  Responding to Commerce's inquiries regarding this
allegation, however, both mandatory respondents in Commerce's
investigation[7] stated that they purchased and used ***extruded***
aluminum, rather than primary aluminum, in producing the subject
merchandise during the POI.[8]  SolarWorld then, on February 14,

---

[6] See [SolarWorld's] Pet. for the Imposition of Antidumping
& Countervailing Duties Pursuant to Sections 701 & 731 of the
Tariff Act of 1930, As Amended, Vol. III (Information Relating
to the People's Republic of China – Countervailing Duties)
[Solar Cells], Whether or Not Assembled into Modules, from
[China], C-570-980, Investigation (Oct. 19, 2011),
reproduced in Def.'s App., ECF No. 44-1 at Tab 1 ("SolarWorld's
Initial CVD Petition"), at 39-42 (alleging governmental
provision of "primary aluminum" for less than adequate
remuneration); Initiation Notice, 76 Fed. Reg. at 70,969
(initiating investigation into "Government Provision of Aluminum
for [Less Than Adequate Remuneration]").

[7] Commerce determined that resource constraint enabled the agency
to individually examine no more than two producers/exporters,
[Solar Cells], Whether or Not Assembled into Modules, from
[China], 77 Fed. Reg. 17,439, 17,439 (Dep't Commerce Mar. 26,
2012) (preliminary affirmative countervailing duty
determination) ("Prelim. Determination"), and selected Changzhou
Trina Solar Energy Co., Ltd. ("Trina Solar") and Wuxi Suntech
Power Co., Ltd. ("Wuxi Suntech") – the "two largest producers/
exporters of subject merchandise, based on aggregate value, to
the United States" – as the two "mandatory respondents." Id.
(citation omitted).

[8] CVD Questionnaire Resp. of [Trina Solar], Vol. 1, [Solar
Cells], Whether or Not Assembled into Modules, from [China],
C-570-980, Investigation (Jan. 31, 2012), reproduced in Def.'s
App., ECF No. 44-5 at Tab 11, at III-49 ("Trina Solar only
purchased aluminum frames, a kind of aluminum extrusion.  It did
not purchase primary aluminum.  Moreover, Trina Solar did not
                                         (footnote continued)

2012 (Commerce's extended deadline for new subsidy allegations[9]),

submitted a new subsidy allegation, claiming that the Chinese

government was providing aluminum **_extrusions_** to respondents for

less than adequate remuneration during the POI.[10]  Finding no

support on the record for an alleged price differential or other

information indicating that aluminum extrusions were being sold

to respondents at less than adequate prices, however,[11] Commerce

---

purchase such frames from producers of primary aluminum."); Countervailing Duty Questionnaire Resp. of [Wuxi Suntech], [Solar Cells], Whether or Not Assembled into Modules, from [China], C-570-980, Investigation (Jan. 31, 2012), reproduced in Def.'s App., ECF No. 44-5 at Tab 10, at 35 ("Wuxi Suntech did not purchase virgin aluminum during the POI, it just purchased aluminum extrusion[s] during the POI.").

[9] New subsidy allegations were initially due no later than 40 days before the scheduled date of the agency's preliminary determination. 19 C.F.R. § 351.301(d)(4)(i)(A) (2011).  In this case, the scheduled date for the preliminary determination was originally January 12, 2012, see Prelim. Results, 77 Fed. Reg. at 17,440, although that date was ultimately extended to March 26, 2012, id. at 17,439 (effective date).  Upon SolarWorld's request, Commerce extended the deadline for submission of additional subsidy allegations until February 14, 2012. Id. at 17,440.

[10] [SolarWorld's] New Subsidy Allegations, [Solar Cells], Whether or Not Assembled into Modules, from [China], C-570-980, Investigation (Feb. 15, 2012) (public version), reproduced in Def.'s App., ECF No. 44-5 at Tab 13, at 32-44 ("SolarWorld's 2d Aluminum Allegation"); see Prelim. Determination, 77 Fed Reg. at 17,440 (noting that SolarWorld initially submitted these new subsidy allegations on February 14, 2012).

[11] Analysis of Feb. 14, 2012 New Subsidy Allegations, [Solar Cells], Whether or Not Assembled into Modules, from [China], C-570-980, Investigation (May 11, 2012), reproduced in Def.'s App., ECF No. 44-6 at Tab 21 ("Determ. Not To Initiate Aluminum

                                    (footnote continued)

determined that SolarWorld's allegation failed to satisfy the

statutory requirements for initiation of a petition-based

investigation pursuant to 19 U.S.C. § 1671a(b).[12]  Accordingly,

Commerce determined not to initiate an investigation of this

alleged subsidy.[13]

In response, on May 15, 2012, SolarWorld submitted new

---

Extrusions"), at 9; see also id. ("[T]here is no other
information on the record regarding possible benchmark prices
for aluminum extrusions that could possibly be used to
demonstrate a potential benefit."); see 19 U.S.C. § 1671(a)
(providing for the imposition of CVD duties "equal to the amount
of the net countervailable subsidy"); id. at § 1677(5)(B)
(defining "countervailable subsidy" as requiring, inter alia,
that "a benefit is thereby conferred"); id. at § 1677(5)(E)(iv)
(defining "benefit conferred," "in the case where goods or
services are provided," as where "such goods or services are
provided for less than adequate remuneration," and providing
that "the adequacy of remuneration shall be determined in
relation to prevailing market conditions for the good or service
being provided," where the prevailing market conditions are
defined to "include price, quality, availability, marketability,
transportation, and other conditions of purchase or sale").

[12] See Determ. Not To Initiate Aluminum Extrusions, ECF No. 44-6
at Tab 21, at 9; 19 U.S.C. § 1671a(b)(1) (requiring petitions
for initiating CVD investigations to allege all "elements
necessary for the imposition of the duty imposed by [19 U.S.C.
§] 1671(a)" and to be "accompanied by information reasonably
available to the petitioner supporting those allegations").

[13] Determ. Not To Initiate Aluminum Extrusions, ECF No. 44-6
at Tab 21, at 9; see also Post-Prelim. Analysis, [Solar Cells],
Whether or Not Assembled into Modules, from [China], C-570-980,
Investigation (June 22, 2012), reproduced in Def.'s App.,
ECF No. 44-6 at Tab 23 ("Post-Prelim. Determination"), at 15
(explaining that Commerce "rejected [SolarWorld's 2d Aluminum
Allegation] because it did not document prices Petitioner
claimed were being paid inside and outside the PRC for aluminum
extrusions") (citation omitted).

factual information regarding aluminum extrusion prices, to
support its February 14, 2012, allegation.[14]  Commerce, however,
determined that, at this point in the proceeding, insufficient
time remained to complete the investigation of aluminum
extrusions, and as such declined to initiate this additional
investigation,[15] noting that the decision not to initiate was "in
no way a comment on the merits of [the] allegation[], which
[SolarWorld] may resubmit at the outset of any administrative
review, if an order is issued in this proceeding."[16]  SolarWorld
now challenges Commerce's decision not to initiate an
investigation into SolarWorld's aluminum extrusions subsidy
allegation, and instead to defer consideration of this
allegation until the next administrative review.[17]

## II. Glass

        Meanwhile, on December 5, 2011, SolarWorld also
submitted an additional subsidy allegation claiming that the

_____

[14] [SolarWorld's] Comments on the Dep't's Analysis of Provision
of Aluminum Extrusions for Less than Adequate Remuneration
Allegation, [Solar Cells], Whether or Not Assembled into
Modules, from [China], C-570-980, Investigation (May 15, 2012),
reproduced in Def.'s App., ECF No. 44-6 at Tab 22 ("SolarWorld's
3d Aluminum Allegation"), at 4 & Ex. 1.

[15] Post-Prelim. Determination, ECF No. 44-6 at Tab 23, at 15-16.

[16] Id. at 16.

[17] Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79,
at 13-29.

Chinese government provided glass to Chinese solar cell

producers for less than adequate remuneration during the POI.[18]

Commerce, however, determined not to initiate an investigation

of this additional allegation, finding the allegation deficient

because (1) it did not provide any information regarding the

specific type of glass used in the production of subject

merchandise, or explain why such information was not available;

(2) it was not accompanied by documentation necessary to support

the claim that several Chinese glass producers are state-owned

enterprises; (3) it was not accompanied by actual source

documentation supporting the allegation of benefit; and (4) the

allegation of specificity[19] was unsupported and unexplained.[20]

        SolarWorld then re-submitted its subsidy allegation

regarding the governmental provision of glass for less than

---

[18] [SolarWorld's] Additional Subsidy Allegation, [Solar Cells], Whether or Not Assembled into Modules, from [China], C-570-980, Investigation (Dec. 5, 2011), reproduced in Def.'s App., ECF No. 44-1 at Tab 2 ("SolarWorld's 1st Glass Allegation").

[19] See 19 U.S.C. § 1677(5)(A) (providing that a countervailable subsidy must be "specific as described in [19 U.S.C. § 1677](5A)"); id. at § 1677(5A) (defining relevant specificity).

[20] Initiation Analysis of Dec. 5, 2011 New Subsidy Allegation, [Solar Cells], Whether or Not Assembled into Modules, from [China], C-570-980, Investigation (Dec. 22, 2011), reproduced in Def.'s App., ECF No. 44-1 at Tab 3 ("Rejection of SolarWorld's 1st Glass Allegation"), at 2-3.

adequate remuneration.[21]  In this new submission, SolarWorld alleged that the type of glass used in the production of subject merchandise "is a type of flat glass called '***float glass***,'"[22] which is "made through the 'float process,' in which glass is formed on a bath of molten tin."[23]  To support its allegation that respondents received a benefit[24] from the governmental provision of glass, SolarWorld argued that "Chinese [solar cell] producers purchase float glass from [state-owned enterprises] at below-market prices,"[25] and supported its claim with pricing data exclusively specific to float glass.[26]

　　　　Based on this re-submitted glass subsidy allegation,

---

[21] [SolarWorld's] Re-Submission of Additional Subsidy Allegation, [Solar Cells], Whether or Not Assembled into Modules, from [China], C-570-980, Investigation (Jan. 23, 2012), reproduced in [Conf. & Pub.] App. to SolarWorld's Mot. for J. on the Agency R., Ct. No. 13-00009, ECF Nos. 80-3 (conf. version) & 81-3 (pub. version) ("Pl.'s App.") at Tab 22 ("SolarWorld's 2d Glass Allegation").

[22] Id. at 2 (emphasis added).

[23] Id. (citation omitted).

[24] See 19 U.S.C. § 1677(5)(B) (providing that a "countervailable subsidy" requires that "a benefit" is conferred); id. at § 1677(5)(E)(iv) (providing that a benefit is conferred, *inter alia*, when "goods or services are provided for less than adequate remuneration").

[25] SolarWorld's 2d Glass Allegation, ECF Nos. 80-3 & 81-3 at Tab 22, at 6.

[26] Id. (relying on id. at Ex. 2 (U.S. Exports of Float Glass: 2010 Monthly Prices) & Ex. 3 (Float Glass in China: 2010 Monthly Prices)).

Commerce determined to initiate "an investigation of the
allegation with respect to the [Government of China]'s provision
of *float glass* for [less than adequate remuneration]."[27]
Responding to the agency's questionnaires, however, both
mandatory respondents reported that "***rolled glass***," as distinct
from float glass, was the major input used in their solar
modules.[28]  In reply, SolarWorld then sought to amend the scope
of the investigation, "to cover *all glass* used by Chinese
respondents in their production of subject merchandise,"[29]
arguing that Commerce's limitation of the investigation to float
glass was "not fully reflective of Petitioner's allegation,"[30]

---

[27] Initiation of New Subsidy Allegation on the Provision of Glass
for Less Than Adequate Remuneration, [Solar Cells], Whether or
Not Assembled into Modules, from [China], C-570-980,
Investigation (Mar. 8, 2012), reproduced in Def.'s App.,
ECF No. 44-5 at Tab 14 ("Float Glass Initiation"), at 3
(emphasis added).

[28] See Post-Prelim. Determination, ECF No. 44-6 at Tab 23, at 12
("While Suntech and Trina Solar each reported small purchases of
'float glass,' both respondents reported that '*rolled glass*' is
the major glass input used in their solar modules, not float
glass.") (emphasis added).

[29] [SolarWorld's] Comments on the Provision of Glass for Less
than Adequate Remuneration Subsidy Allegation & Initiation,
[Solar Cells], Whether or Not Assembled into Modules, from
[China], C-570-980, Investigation (May 2, 2012), reproduced in
Def.'s App., ECF No. 44-5 at Tab 19 ("SolarWorld's 3d Glass
Allegation"), at 3 (emphasis added); see also id. at 4
(requesting that Commerce "amend its notice of initiation to
include the provision of all glass used in the production of
subject merchandise").

[30] Id. at 4.

or, in the alternative, requesting permission to submit an additional allegation specific to *rolled* glass.[31]

Commerce rejected SolarWorld's contention that the subsidy allegation on which Commerce based its initiation was sufficient to cover types of glass beyond float glass, emphasizing that the "initiation memorandum stated clearly that the investigation was limited to float glass"[32] because "[t]he information provided by [SolarWorld] pertained solely to float glass, which is clearly distinct from rolled glass,"[33] and as such "there was no basis to expand the allegation to cover rolled glass."[34]

---

[31] See id. at 5.

[32] Post-Prelim. Determination, ECF No. 44-6 at Tab 23, at 15.

[33] I&D Mem. cmt. 10 at 38; see [Suppl. Resp. of Wuxi Suntech], [Solar Cells], Whether or Not Assembled into Modules, from [China], C-570-980, Investigation (Apr. 10, 2012), reproduced in Def.'s App., ECF No. 44-5 at Tab 18, at 2-3 ("During the POI, Wuxi Suntech used both float glass and rolled glass in its module operations.  Rolled glass is fundamentally different from float [g]lass . . . .  Specifically, the molding process is entirely different for the two types of glasses.  Rolled glass is produced by pouring molten glass onto two rollers to achieve an even thickness, which process also makes polishing easier. The end-product is used to produce patterned and wired glass. In contrast, float glass is produced by pouring molten glass onto a bed of molten tin and drawing off in continuous ribbon, which process gives high quality flat glass a fire polish finish besides even thickness.  As such, rolled glass and float glass are two entirely different products, and thus cannot be treated as one of the same.").

[34] I&D Mem. cmt. 10 at 38.

In addition, Commerce also denied SolarWorld permission to submit additional glass subsidy allegations, explaining that investigations into whether an input is being provided for less than adequate remuneration "require gathering detailed information concerning the ownership and management of numerous producers supplying the input, evaluating extensive purchase information, and conducting extensive analysis of the input market and research into possible benchmarks,"[35] and as such "are particularly time consuming and would be difficult to complete at such a late stage in an investigation."[36]

Acknowledging that the agency may examine practices that appear to be countervailable subsidies discovered at any time during the course of an investigation, Commerce explained that it has the authority in such circumstances to "defer examination of any such practice if there is insufficient time remaining before the final determination,"[37] and noted that the agency's "rejection of [SolarWorld]'s arguments is in no way a comment on the merits of those allegations, which [SolarWorld] may resubmit at the outset of any administrative review, if an

---

[35] Post-Prelim. Determination, ECF No. 44-6 at Tab 23, at 16.

[36] Id.

[37] Id. (citing 19 C.F.R. § 351.311(c)).

order is issued in this proceeding."[38]

Because the value of each respondent's total purchases of float glass during the POI was less than 0.005 percent of their respective total sales, Commerce found that "any benefit from this program would have no impact on the overall subsidy rate."[39]  Commerce therefore determined not to include the governmental provision of float glass within the agency's net subsidy calculations in this investigation.[40]

SolarWorld now claims that "Commerce's interpretation of SolarWorld's allegation as solely pertaining to float glass, which respondents largely did not use, was unreasonable, and its failure to investigate the Chinese government's provision for [less than adequate remuneration] of the glass used by respondents . . . was unlawful."[41]

Following a brief statement of the relevant standards of review, SolarWorld's claims are addressed below.

## STANDARD OF REVIEW

The court will sustain Commerce's countervailing duty

---

[38] Id.

[39] Post-Prelim. Determination, ECF No. 44-6 at Tab 23, at 12 (citations omitted).

[40] Id. at 13.

[41] Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79, at 32.

determinations if they are supported by substantial evidence and

are otherwise in accordance with law.[42]  Substantial evidence is

"such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion,"[43] and the substantial evidence

standard of review "can be translated roughly to mean 'is [the

determination] unreasonable?'"[44]

    Where the statute and regulations leave the agency

with some freedom to use its judgment, the court reviews such

decisions for abuse of discretion.[45]  "An abuse of discretion

occurs where the decision is based on an erroneous

interpretation of the law, on factual findings that are not

supported by substantial evidence, or represent an unreasonable

judgment in weighing relevant factors."[46]

## DISCUSSION

    When an interested party like SolarWorld[47] files a

---

[42] See 19 U.S.C. § 1516a(b)(1)(B)(i).

[43] Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938).

[44] Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351
(Fed. Cir. 2006) (citation omitted, alteration in the original).

[45] See, e.g., Wuhu Fenglian Co. v. United States, 36 CIT __,
836 F. Supp. 2d 1398, 1403 (2012).

[46] WelCom Prods., Inc. v. United States, 36 CIT __,
865 F. Supp. 2d 1340, 1344 (2012) (citing Star Fruits S.N.C.
v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

[47] See 19 U.S.C. § 1677(9)(C) (defining "interested party" as,
                                        (footnote continued)

timely[48] petition that (1) alleges all elements necessary for the
imposition of a countervailing duty pursuant to 19 U.S.C.
§ 1671(a); and (2) "is accompanied by information reasonably
available to the petitioner supporting those allegations,"[49]
Commerce must initiate an investigation into "whether the
elements necessary for the imposition of a duty under [19 U.S.C.
§ 1671(a)] exist."[50]  Where this is not the case, but Commerce
nevertheless "discovers [in the course of a CVD proceeding] a
practice which appears to be a countervailable subsidy [with
respect to the merchandise which is the subject of the
proceeding],"[51] then Commerce "shall include the practice,
subsidy, or subsidy program in the proceeding,"[52] as long as
Commerce "concludes that sufficient time remains before the

---

*inter alia*, "a manufacturer, producer, or wholesaler in the
United States of a domestic like product"); Compl., ECF No. 8,
at ¶ 3 (stating that SolarWorld "is a manufacturer of the
domestic like product in the United States").

[48] See 19 U.S.C. § 1671a(b)(1) (providing that "[t]he petition
may be amended at such time, and upon such conditions, as
[Commerce] may permit").

[49] Id.

[50] Id. at §§ 1671a(a)-(b)(1) (providing that "[a] countervailing
duty proceeding *shall be initiated*" under such circumstances)
(emphasis added).

[51] 19 U.S.C. § 1677d.

[52] Id. at § 1677d(1).

scheduled date for the final determination."[53]  If Commerce

concludes that insufficient time remains, however, then the

agency may defer its examination until a subsequent

administrative review, if any.[54]

          Here, SolarWorld argues that Commerce unreasonably

decided to defer until the next administrative review its

investigations into the Chinese government's alleged provision

of aluminum extrusions and rolled glass to producers of subject

merchandise for less than adequate remuneration.[55]  Specifically,

SolarWorld argues, first, that its latest timely aluminum

extrusions and glass allegations both satisfied the requirements

of 19 U.S.C. §§ 1671a(b)(1) and 1671(a), such that Commerce was

required to initiate investigations into these allegations

-----

[53] 19 C.F.R. § 351.311(b).  The validity of this regulation is
uncontested here. See Pl.'s Br., Consol. Ct. No. 13-00009,
ECF Nos. 78 & 79, at 24 (relying on this regulation);
cf., e.g., Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def.
Council, Inc., 435 U.S. 519, 543 (1978) ("Absent constitutional
constraints or extremely compelling circumstances the
administrative agencies should be free to fashion their own
rules of procedure and to pursue methods of inquiry capable of
permitting them to discharge their multitudinous duties.")
(quotation marks and citation omitted).

[54] 19 C.F.R. § 351.311(c).

[55] See Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79,
at 13-39; cf. Post-Prelim. Determination, ECF No. 44-6
at Tab 23, at 15-16 (unchanged in the Final Determination,
77 Fed. Reg. 63,788; I&D Mem. cmt. 10 at 36-38).

during this CVD proceeding;[56] or, in the alternative, that even

if these allegations were deficient under 19 U.S.C.

§ 1671a(b)(1), Commerce unreasonably determined that

insufficient time remained to permit SolarWorld to file

additional allegations, or to examine these allegations as

discovered practices that appear to be countervailable

subsidies, pursuant to 19 U.S.C. § 1677d.[57]  Each argument is

addressed in turn below.

I.   Petition-Based Initiation Under 19 U.S.C. § 1671a(b):
     Deficiencies in SolarWorld's Timely Glass and Aluminum
     Extrusions Allegations

          First, SolarWorld challenges Commerce's determinations

that SolarWorld's latest timely subsidy allegations regarding

---

[56] See Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79,
at 15-17 (arguing that Commerce improperly determined that
SolarWorld's timely aluminum extrusions allegation was
deficient); id. at 29-32 (arguing that Commerce improperly
determined that SolarWorld's timely glass allegation was limited
to float glass, which the respondents purchased only in
negligible quantities, rather than all glass used by the
respondents).

[57] See id. at 17-23 (arguing that Commerce unreasonably denied
SolarWorld permission to file additional information regarding
its aluminum extrusions allegation); id. at 23-29 (arguing that
Commerce improperly failed to initiate an examination of
apparent aluminum extrusions subsidies pursuant to 19 U.S.C.
§ 1677d); id. at 32-34 (arguing that Commerce unreasonably
denied SolarWorld permission to file additional information
regarding its glass allegation); id. at 34-39 (arguing that
Commerce improperly failed to initiate an examination of
apparent rolled/patterned glass subsidies pursuant to 19 U.S.C.
§ 1677d).

aluminum extrusions and non-float glass did not sufficiently
allege and document all elements necessary for the imposition of
countervailing duties.[58]  Specifically, with regard to
SolarWorld's latest timely aluminum extrusions allegation,
Commerce found that the element of 'benefit conferred' was
improperly alleged because it lacked supporting documentation.[59]
With regard to glass, Commerce found that the type of glass with
respect to which SolarWorld alleged and documented sufficient
information to initiate an investigation was purchased in such
negligible quantities by the mandatory respondents that any
benefit therefrom would not affect the overall subsidy rate, and
the allegation did not sufficiently allege and document all
necessary elements with respect to any other type of glass.[60]
SolarWorld challenges each of these determinations.

---

[58] See Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79,
at 15-17, 29-32.

[59] Determ. Not To Initiate Aluminum Extrusions, ECF No. 44-6
at Tab 21, at 9; Post-Prelim. Determination, ECF No. 44-6
at Tab 23, at 15 (explaining that Commerce "rejected
[SolarWorld's Feb. 14, 2012 aluminum extrusions] allegation
because it did not document prices Petitioner claimed were being
paid inside and outside the PRC for aluminum extrusions")
(citation omitted) (unchanged in the Final Determination,
77 Fed. Reg. 63,788; I&D Mem. cmt. 10 at 36-38); see supra
Background Section I.

[60] Post-Prelim. Determination, ECF No. 44-6 at Tab 23, at 12-13;
I&D Mem. cmt. 10 at 38; see supra Background Section II.

### A. Aluminum Extrusions

SolarWorld claims that Commerce improperly declined to initiate a petition-based investigation under 19 U.S.C. § 1671a(b) into whether aluminum extrusions were being provided to respondents for less than adequate remuneration during the POI.[61]  But as Commerce explained, SolarWorld's timely allegation regarding the provision of aluminum extrusions failed to satisfy the requirements for initiation under 19 U.S.C. § 1671a(b), because it did not provide any support for its pricing assertions.[62]  Section 1671a(b)(1) requires Commerce to initiate CVD investigations when an interested party alleges all of "the elements necessary for the imposition of the duty" pursuant to 19 U.S.C. § 1671(a), and provides evidentiary support for each of those allegations.[63]  One of these necessary elements requires an allegation, supported with evidence, that "a benefit is . . . conferred" by the governmental provision of aluminum extrusions.[64]  Such a benefit may be demonstrated by price

---

[61] Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79, at 13-17.

[62] See Determ. Not To Initiate Aluminum Extrusions, ECF No. 44-6 at Tab 21, at 9; Post-Prelim. Determination, ECF No. 44-6 at Tab 23, at 15.

[63] 19 U.S.C. § 1671a(b)(1).

[64] See 19 U.S.C. § 1677(5)(B) (defining "countervailable subsidy" as requiring that, *inter alia*, "a benefit is thereby conferred").

comparisons showing that the prices paid by respondents to the
Chinese government constitute "less than adequate
remuneration."[65]

        Here, Commerce determined that SolarWorld failed to
satisfy the requirements for initiation pursuant to 19 U.S.C.
§ 1671a(b)(1) because there was no "supporting documentation on
the record for the alleged price differential,"[66] nor any other
record evidence "which indicates that aluminum extrusions are
being sold at low prices in the PRC."[67]  SolarWorld argues that
this determination was unreasonable because SolarWorld alleged
actual prices in the narrative portion of its allegation,
"demonstrating the significant benefit received by Chinese solar
producers during the POI."[68]  But accepting this argument would
undermine the statutory requirement that not only must the
Petitioner *allege* all of the necessary elements, but the
allegations must also be accompanied with reasonably available

---

[65] Id. at § 1677(5)(E)(iv) (defining "benefit conferred," "in the
case where goods or services are provided," as where "such goods
or services are provided for less than adequate remuneration").

[66] Determ. Not To Initiate Aluminum Extrusions, ECF No. 44-6
at Tab 21, at 9.

[67] Id.

[68] See Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79,
at 16 (citing SolarWorld's 2d Aluminum Allegation, ECF No. 44-5
at Tab 13, at 42).

evidentiary support.[69]  SolarWorld's allegation provided no

sources for either the average U.S. export price or the average

Chinese import price alleged.[70]  As such, SolarWorld did not

"support[] those allegations."[71]

    Next, SolarWorld argues that Commerce unreasonably

found no support for the benefit element in SolarWorld's timely

aluminum extrusions allegation, because the allegation "included

significant, documented information on the Chinese government's

ownership of China's aluminum industry and on the policies

---

[69] 19 U.S.C. § 1671a(b)(1).

[70] SolarWorld's 2d Aluminum Allegation, ECF No. 44-5 at Tab 13,
at 42 & nn. 106-107 (providing no source for the Chinese import
prices which SolarWorld claimed to be using "as a proxy for
domestic Chinese prices," and citing to "ITC Report" for the
U.S. export prices that SolarWorld claimed to be using "as a
proxy for world price"); Ex. 19 to SolarWorld's 2d Aluminum
Allegation, ECF No. 44-5 at Tab 13 (the sole report from the
International Trade Commission ("ITC") that was appended to
SolarWorld's submission, making no mention of prices for
aluminum extrusions); see Determ. Not To Initiate Aluminum
Extrusions, ECF No. 44-6 at Tab 21, at 9 & n.13 ("[SolarWorld]
cites to an ITC report attached to its allegation to support its
world export price[;] however, this report does not address
aluminum, and contains no price data.  We were unable to locate
this price anywhere else in the submission or in previous
submissions . . ., and there is no other information on the
record regarding possible benchmark prices for aluminum
extrusions that could possibly be used to demonstrate a
potential benefit.") (noting that although SolarWorld also "did
not provide a citation for the figure it relied on for the PRC
domestic price," Commerce "was able to locate this figure as the
POI average unit value of imported aluminum extrusions reported
by the [Government of China] in [a prior submission]").

[71] 19 U.S.C. § 1671a(b)(1).

instituted by the Chinese government to manage aluminum

prices,"[72] which SolarWorld argues "provided further support for

the pricing data included in the allegation."[73]  But the sources

provided in this portion of the allegation give no specific

information regarding aluminum extrusion pricing during the

POI.[74]  And while the allegation asserts that the Chinese

government "manages basic supply and demand in electrolytic

aluminum (i.e., primary aluminum),"[75] and that "low prices are

passed on from the primary aluminum producers through the

aluminum extrusion producers to other downstream users,"[76] the

allegation provides no evidence of actual pricing during the

---

[72] Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79, at 16
(citing SolarWorld's 2d Aluminum Allegation, ECF No. 44-5
at Tab 13, at 34-42).

[73] Id.

[74] See SolarWorld's 2d Aluminum Allegation, ECF No. 44-5
at Tab 13, at 34-35 (relying on Ex. III-69 ("Notice of
Guidelines on Accelerating the Adjustment of Aluminum Industry
Structure," Fa Gai Yun Xing No. 589 (2006)) to SolarWorld's
Initial CVD Petition, ECF No. 44-1 at Tab 1 Ex. III-69 ("Notice
of Guidelines") (omitted from Pl.'s App., Consol. Ct.
No. 13-00009, ECF Nos. 80 & 81 at Tab 3) (providing no
information regarding aluminum extrusion prices during the
POI)); id. at 36-42 (providing no additional sources for
aluminum extrusion prices during the POI).

[75] Id. at 34 (citing Notice of Guidelines, ECF No. 44-1 at Tab 1
Ex. III-69, without providing a pinpoint citation).

[76] Id. (providing no citation for this proposition, but citing
Notice of Guidelines, ECF No. 44-1 at Tab 1 Ex. III-69, without
providing a pinpoint citation, for the assertion that "[t]he
plan specifically addresses aluminum extrusions," id. at 34-35).

relevant time period.[77]

      Finally, SolarWorld argues that Commerce itself should
have filled in the evidentiary gap, either by extrapolating from
the agency's findings in an entirely separate proceeding (where
Commerce found that the Chinese aluminum extrusions industry was
benefitting from certain countervailable subsidies during the
year prior to the POI here),[78] or by "obtain[ing] the pricing
data from the International Trade Commission's publicly
available and easily accessible DataWeb service."[79]  But
Commerce's previous finding, on the record of a separate

---

[77] See id. at 34-43.

[78] Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79, at 16
(citing Aluminum Extrusions from the [PRC], 76 Fed. Reg. 30,653
(Dep't Commerce May 26, 2011) (countervailing duty order));
see SolarWorld's 2d Aluminum Allegation, ECF No. 44-5 at Tab 13,
at 35-36 (arguing that because Commerce "has recently found the
provision of primary aluminum for less than adequate
remuneration to be a countervailable subsidy in Aluminum
Extrusions from China," Commerce "should find the provision of
aluminum extrusions for less than adequate remuneration to
provide a countervailable subsidy in this investigation")
(citing Issues & Decision Mem., Aluminum Extrusions from the
[PRC], C-570-968, Investigation (Mar. 28, 2011) (adopted in
76 Fed. Reg. 18,521 (Dep't Commerce Apr. 4, 2011) (final
affirmative countervailing duty determination) ("Aluminum
Extrusions from China Final CVD Determination")) at 32-36;
compare Aluminum Extrusions from China Final CVD Determination,
76 Fed. Reg. at 18,521 (providing the POI in the aluminum
extrusions case to have been January 1, 2009, through December
31, 2009), with Notice of Initiation, 76 Fed. Reg. at 70,966
(providing the POI in the CVD proceeding here to have been
January 1, 2010, through December 31, 2010).

[79] See Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79,
at 17 (citation omitted).

proceeding, that some Chinese aluminum extrusions producers were benefitting from certain governmental subsidies does not in itself constitute evidence that the Chinese solar panel industry is therefore benefitting from the governmental provision of aluminum extrusions for less than adequate remuneration.  In addition, accepting SolarWorld's argument that Commerce should have independently researched the publicly available pricing data would distort the burden of production placed on SolarWorld, as the interested party petitioning Commerce to investigate its subsidy allegation, to allege all necessary elements for the imposition of a countervailing duty, including the element of benefit conferred, and to support each element with reasonably available evidence.[80]  Under Section 1671a(b)(1), it is not for Commerce to seek out evidence supporting the interested party's petition; rather, it is the interested party's burden to state and provide reasonably available evidentiary support for each legal element of the alleged countervailable subsidy to be investigated.[81]  Requiring that Commerce itself should have researched the International Trade Commission's available price data to establish the evidentiary support for SolarWorld's allegation has the untenable effect of

---

[80] See 19 U.S.C. §§ 1671a(b)(1), 1677(5)(B).

[81] See 19 U.S.C. § 1671a(b)(1).

negating the statutory requirement that petitioners themselves
supply the reasonably available evidence when petitioning for
the initiation of specific subsidy investigations pursuant to
Section 1671a(b)(1).[82]

Accordingly, because the record here supports
Commerce's conclusion that SolarWorld's Section 1671a(b)(1)
petition to investigate the alleged governmental provision of
aluminum extrusions to respondents for less than adequate
remuneration did not satisfy the requirements for initiation
(because the allegation of benefit conferred was devoid of any
evidentiary support), Commerce's determination not to initiate
the investigation pursuant to 19 U.S.C. § 1671a(b)(1), on the
basis of SolarWorld's incomplete allegation, is not
unreasonable, and is therefore sustained.

### B. Glass

SolarWorld also claims that Commerce improperly
construed its latest timely glass subsidy allegation to cover
solely float glass, rather than rolled or patterned glass.[83]  But
this argument is belied by the facts.  SolarWorld's latest
timely glass subsidy allegation was a renewed allegation that

---

[82] See id.

[83] Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79,
at 29-32.

specifically addressed the deficiencies identified by Commerce

in SolarWorld's initial glass allegation, among which was

Commerce's concern that SolarWorld had failed to specify "the

*type of glass* used" in the production of subject merchandise

that was allegedly being subsidized by the Chinese government.[84]

Responding to this specific concern, SolarWorld's renewed

allegation unambiguously stated that "[t]he glass used in the

production of [subject merchandise] is *a type of flat glass*

*called 'float glass*.'"[85]  Moreover, this allegation explicitly

distinguished float glass from rolled glass, asserting that the

type of glass used to produce the subject merchandise is

specifically float glass.[86]  Finally, all of the pricing

information with which SolarWorld supported its allegation that

respondents were receiving a benefit from the alleged subsidy

was specific to float glass.[87]  Accordingly, Commerce found that

---

[84] Rejection of SolarWorld's 1st Glass Allegation, ECF No. 44-1 at Tab 3, at 2 (emphasis added).

[85] SolarWorld's 2d Glass Allegation, Consol. Ct. No. 13-00009, ECF Nos. 80-3 & 81-3 at Tab 22, at 2 (emphasis added).

[86] Id. ("Depending on the manufacturing process used, flat glass comes either as float glass, sheet glass or rolled glass.  The glass typically used in [the subject merchandise] is *float glass*, made through the 'float process,' in which glass is formed on a bath of molten tin.") (emphasis added, quotation marks and citations omitted).

[87] Id. at 6 (relying on id. at Exs. 2 & 3 to support pricing allegations); id. at Ex. 2 (providing 2010 monthly prices for "U.S. exports of *float glass*" (emphasis added)); id. at Ex. 3
                                          (footnote continued)

SolarWorld had adequately alleged the elements necessary for the
imposition of a countervailing duty pursuant to 19 U.S.C.
§ 1671(a) solely with respect to float glass.[88]  On this record,
Commerce's determination that SolarWorld's allegations satisfied
the requirements for initiation pursuant to 19 U.S.C. § 1671a(b)
solely with respect to float glass was not unreasonable.
Because this determination comports with a reasonable reading of
the record evidence, and is therefore supported by substantial
evidence,[89] it is sustained.

II.  Commerce Did Not Abuse Its Discretion in Determining to
     Defer the Investigations.

          In the alternative, SolarWorld argues that even if
Commerce correctly concluded that its timely aluminum extrusions
and glass subsidy allegations did not meet the requirements for
initiation pursuant to 19 U.S.C. § 1671a(b), Commerce should
have either permitted SolarWorld to correct and re-submit its
deficient allegations, or else self-initiated the investigations

---

(providing 2010 monthly prices for "*float glass* in China,"
sourced from the "China Glass Network, average of prices for
4mm thickness *float glass*" (emphasis added)).

[88] Float Glass Initiation, ECF No. 44-5 at Tab 14, at 3
("[SolarWorld] has provided information that indicates that
*float glass* is provided through [state-owned enterprises] for
[less than adequate remuneration].") (emphasis added).

[89] See Nippon Steel, 458 F.3d at 1351.

pursuant to 19 U.S.C. § 1677d.[90]

> A. *Commerce Did Not Abuse Its Discretion in Determining*
> *That Insufficient Time Remained to Permit SolarWorld*
> *to Re-Submit Its Deficient Allegations.*

The statute vests Commerce with the discretion to determine when and upon which conditions petitioners may amend their subsidy allegations in CVD proceedings.[91]  Here, by the time that Commerce's extended deadline for new subsidy allegations expired,[92] SolarWorld had presented Commerce with at least thirty-four separate subsidy allegations, including five new allegations submitted on the day of the deadline,[93] with less

---

[90] Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79, at 17-29, 32-39.

[91] 19 U.S.C. § 1671a(b)(1) (providing that petitions to initiate investigations of specific subsidy allegations "may be amended at such time, and upon such conditions, as [Commerce] may permit").

[92] See *supra* note 9 (providing relevant background and citations); Def.'s Resp. in Opp'n to Pl.'s Mot. for J. Upon the Admin. R., ECF No. 43 ("Def.'s Br.") at 4 (providing more detailed information in this regard, with relevant citations to the record).

[93] See Initiation Notice, 76 Fed. Reg. at 70,968-69 (listing twenty-seven separate subsidy allegations at initiation on November 16, 2011); SolarWorld's 1st Glass Allegation, ECF No. 44-1 at Tab 2 (additional allegation submitted on December 5, 2011; SolarWorld's 2d Glass Allegation, Consol. Ct. No. 13-00009, ECF Nos. 80-3 & 81-3 at Tab 22 (additional allegation submitted on January 23, 2012); Prelim. Determination, 77 Fed. Reg. at 17,440 ("Based on [a] request from [SolarWorld], [Commerce] extended the deadline until February 14, 2012, for submitting additional subsidy allegations.  . . .  On February 14, 2012, [SolarWorld]
(footnote continued)

than a month remaining until the agency was then scheduled to

present its preliminary results for the parties' review,[94] and

therefore approximately three months remaining until the

---

submitted five additional new subsidy allegations."). The
twenty-seven initial allegations, plus the December 5, 2011,
glass allegation, plus the January 31, 2012, additional glass
allegation, plus the five additional February 14, 2012,
allegations add up to a total of thirty-four.

[94] See Prelim. Determination, 77 Fed. Reg. at 17,440 (noting that
the extended the deadline for submission of additional subsidy
allegations was February 14, 2012); [Solar Cells], Whether or
Not Assembled into Modules, from [China], 77 Fed. Reg. 4764,
4765 (Dep't Commerce Jan. 31, 2012) (second postponement of
preliminary determination in the countervailing duty
investigation) ("2d Postponement") (announcing the latest
postponement as of the February 14, 2012, new subsidy deadline;
postponing the preliminary determination, at SolarWorld's second
request, until March 2, 2012). Subsequently, the preliminary
determination was postponed again because, "[d]ue to the number
of companies and the complexity of the alleged countervailable
subsidy practices being investigated," this CVD investigation
was deemed "extraordinarily complicated." [Solar Cells], Whether
or Not Assembled into Modules, from [China], 77 Fed. Reg.
10,478, 10,478 (Dep't Commerce Feb. 22, 2012) (postponement of
preliminary determination in the countervailing duty
investigation) ("3d Postponement") (postponing the preliminary
determination until March 19, 2012); but see Prelim.
Determination, 77 Fed. Reg. at 17,439 (providing an effective
date of March 26, 2012). When Commerce issued its preliminary
determination, the agency had not yet reached a determination as
to the five new subsidy allegations submitted by SolarWorld on
the day of the final extended new subsidy deadline, Prelim.
Determination, 77 Fed. Reg. at 17,440, but had already
determined that, even without these timely new allegations, "the
investigation [was] extraordinarily complicated." 3d
Postponement, 77 Fed. Reg. at 10,478 (citing 19 U.S.C.
§ 1671b(c)(1)(B)(i) (permitting postponement of preliminary
determination if Commerce determines, inter alia, that "the case
is extraordinarily complicated")).

then-scheduled final determination.[95]  By the time that

SolarWorld sought to amend its deficient aluminum extrusions and

rolled glass allegations – May 15, 2012, and May 2, 2012,

respectively[96] – the re-scheduled deadline for the final

determination was less than three months away.[97]  And although

the deadline for the final determination (newly aligned with the

---

[95] See 19 U.S.C. § 1671d(a)(1) (requiring Commerce to issue its
final determination within 75 days of the preliminary
determination); 2d Postponement, 77 Fed. Reg. at 4765 (setting
the date for the preliminary determination, effective at the
time of the latest extended deadline for new subsidy
submissions, as March 2, 2012); cf. 19 C.F.R. § 351.311(c)
(permitting deferral of self-initiated examination under
19 U.S.C. § 1677d if "insufficient time remains before *the
scheduled date* for the final determination") (emphasis added).
On April 30, 2012, however, Commerce granted SolarWorld's timely
request to align the deadline for the final CVD determination
with the deadline for the final determination in the companion
antidumping investigation of the subject merchandise. [Solar
Cells], Whether or Not Assembled into Modules, from [China],
77 Fed. Reg. 25,400, 25,400 (Dep't Commerce Apr. 30, 2012)
(alignment of final countervailing duty determination with final
antidumping duty determination) ("Notice of Alignment") ("The
final CVD determination will be issued on the same date as the
final [antidumping] determination, which is currently scheduled
to be issued no later than July 30, 2012, unless postponed.")
(relying on 19 U.S.C. § 1671d(a)(1) ("[W]hen [a CVD]
investigation . . . is initiated simultaneously with an
[antidumping] investigation . . ., which involves imports of the
same class or kind of merchandise from the same or other
countries, [Commerce], if requested by the petitioner, shall
extend the date of the final [CVD] determination . . . to the
date of the final [antidumping] determination . . . .") and
19 C.F.R. § 351.210(b)(4)(i) (providing for same)).

[96] SolarWorld's 3d Aluminum Allegation, ECF No. 44-6 at Tab 22,
at 4 & Ex. 1; SolarWorld's 3d Glass Initiation, ECF No. 44-5
at Tab 19, at 5.

[97] Notice of Alignment, 77 Fed. Reg. at 25,400.

deadline for the final determination in the companion
antidumping investigation) was subsequently postponed, only
three and a half months remained by the time of Commerce's
decision that insufficient time remained to permit SolarWorld to
re-file or to self-initiate pursuant to 19 U.S.C. § 1677d.[98]
Having found SolarWorld's latest timely aluminum extrusions and
non-float glass subsidy allegations to fall short of the
requirements for initiation under 19 U.S.C. § 1671a(b),[99]
Commerce determined that "there was simply not enough time to
allow [SolarWorld] to re-file its allegations and collect and
analyze the information necessary,"[100] which typically "amounts
to several hundred pages of documents that must be analyzed once
all questionnaires have been answered,"[101] in a proceeding that,
even without these additional allegations, was already

---

[98] Post-Prelim. Determination, ECF No. 44-6 at Tab 23, at 15-16
(issuing the decision that insufficient time remained on
June 22, 2012); see [Solar Cells], Whether or Not Assembled into
Modules, from [China], 77 Fed. Reg. 31,309, 31,324 (Dep't
Commerce May 25, 2012) (preliminary determination of sales at
less than fair value, postponement of final determination and
affirmative preliminary determination of critical circumstances)
(postponing the final determination "until no later than
135 days after the publication of this notice in the Federal
Register").

[99] See supra Discussion Section I (affirming Commerce's
determinations in this regard).

[100] I&D Mem. cmt. 10 at 37 (footnote omitted).

[101] Id. at 38.

"extraordinarily complicated."[102]

        SolarWorld argues that Commerce unreasonably

determined that insufficient time remained to initiate the

investigations after finding SolarWorld's latest timely aluminum

extrusions and glass allegations to be deficient.[103]  But

"agencies with statutory enforcement responsibilities enjoy

broad discretion in allocating investigative and enforcement

resources,"[104] and here Commerce was already occupied with

investigating, within strict statutory deadlines,[105] dozens of

SolarWorld's additional subsidy allegations.[106]  Because

Commerce's conclusion that insufficient time remained to permit

---

[102] See 3d Postponement, 77 Fed. Reg. at 10,478.

[103] Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79,
at 21-23; 33-34.

[104] Torrington Co. v. United States, 68 F.3d 1347, 1351
(Fed. Cir. 1995) (citing Heckler v. Chaney, 470 U.S. 821, 831
(1985)); see also Longkou Haimeng Mach. Co. v. United States,
32 CIT 1142, 1151, 581 F. Supp. 2d 1344, 1353 (2008) ("[A]ny
assessment of Commerce's operational capabilities or deadline
rendering must be made by the agency itself.") (relying on
Torrington, 68 F.3d at 1351).

[105] Cf., e.g., Maui Pineapple Co. v. United States, 27 CIT 580,
595, 264 F. Supp. 2d 1244, 1257 (2003) ("[D]ue to deadlines and
limited resources, it is vital that accurate information be
provided promptly to allow the agency sufficient time for
review[,] [and] Commerce . . . has broad discretion to fashion
its own rules of administrative procedure, including the
authority to establish and enforce time limits concerning the
submission of written information and data.") (quotation marks
and citations omitted).

[106] See supra note 93 (providing relevant citations).

SolarWorld to re-file its subsidy allegations after the latter
were found to be deficient was not demonstrably "an unreasonable
judgment in weighing [the] relevant factors,"[107] Commerce did not
abuse its discretion in so concluding.[108]  And while SolarWorld
argues that Commerce acted arbitrarily, because the agency
permitted certain respondents to cure deficiencies in their
questionnaire responses,[109] Commerce did not "treat[] similar

---

[107] See WelCom Prods., 36 CIT at __, 865 F. Supp. 2d at 1344 ("An
abuse of discretion occurs where the decision is based on an
erroneous interpretation of the law, on factual findings that
are not supported by substantial evidence, or represent an
unreasonable judgment in weighing relevant factors.") (citing
Star Fruits, 393 F.3d at 1281).  Here, Commerce properly
interpreted the law to grant the agency discretion,
see 19 U.S.C. § 1671a(b)(1) (providing that new subsidy
allegations "may be amended at such time, and upon such
conditions, as [Commerce] may permit", and the agency's factual
findings regarding the deficiencies in SolarWorld's latest
timely Section 1671a(b)(1) petitions for investigation of its
aluminum extrusions and glass allegations were supported by
substantial evidence. See supra Discussion Section I (affirming
Commerce's determinations in this regard).

[108] See Vt. Yankee Nuclear Power Corp., 435 U.S. at 543 ("Absent
constitutional constraints or extremely compelling circumstances
the administrative agencies should be free to fashion their own
rules of procedure and to pursue methods of inquiry capable of
permitting them to discharge their multitudinous duties.")
(quotation marks and citation omitted).

[109] Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79,
at 18-20; 32-33 (arguing that Commerce acted arbitrarily in
deciding that insufficient time remained for SolarWorld to
re-file its deficient allegations, because the agency had
provided respondents with opportunities to correct deficiencies
in their questionnaire responses) (quoting SKF USA, Inc.
v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (quoting
Transactive Corp. v. United States, 91 F.3d 232, 237 (D.C. Cir.
                                        (footnote continued)

situations differently,"[110] because the agency had in fact also permitted SolarWorld to cure the deficiencies in both its initial aluminum and glass allegations, and had extended the deadlines to permit SolarWorld to do so.[111]

> *B. Commerce Did Not Abuse Its Discretion in Determining That Insufficient Time Remained to Self-Initiate Under 19 U.S.C. § 1677d.*

Next, SolarWorld argues that Commerce should have nevertheless initiated investigations into whether the Chinese government provided aluminum extrusions and rolled glass to respondents for less than adequate remuneration, pursuant to the

---

1996) ("[A]n agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently."))).

[110] See SKF USA, 263 F.3d at 1382 (quotation marks and citation omitted).

[111] See *supra* Background Section I & nn.6, 8-10 (providing background and relevant citations regarding permitted amendments to SolarWorld's initial aluminum allegation); *supra* Background Section II & nn. 18, 20-21 (providing background and relevant citations regarding permitted amendments to SolarWorld's initial glass allegation); *supra* note 93 (detailing the relevant time extensions granted at SolarWorld's request); see also Def.'s Br., ECF No. 43, at 20 ("[T]hroughout the proceeding, and in recognition of the extraordinary complexity of the investigation, Commerce granted several extensions of time to *both* SolarWorld and the respondents.") (emphasis in original); cf. Royal Thai Gov't v. United States, 28 CIT 1218, 1226, 341 F. Supp. 2d 1315, 1323 (2004) ("[Petitioner] overlooks the fact that there should not have been any 'evidentiary deficiencies' to correct.") (citation omitted), aff'd in part & rev'd in part on other grounds, 436 F.3d 1330 (Fed. Cir. 2006).

agency's authority under 19 U.S.C. § 1677d, arguing that
Commerce had more than enough time in which to self-initiate and
complete these additional investigations in this proceeding.[112]

        Commerce acknowledged its "authority to examine
practices that appear to be countervailable subsidies discovered
at any time during the course of an investigation,"[113] but
referenced the agency's regulations in explaining that Commerce
may "defer examination of any such practice if there is
insufficient time remaining before the final determination."[114]
Finding that insufficient time remained in this proceeding to
initiate these investigations, notwithstanding the evidentiary
deficiencies in SolarWorld's allegations, Commerce specifically

---

[112] Pl.'s Br., Consol. Ct. No. 13-00009, ECF Nos. 78 & 79,
at 23-27; 34-38.

[113] Post-Prelim. Determination, ECF No. 44-6 at Tab 23, at 16;
see 19 U.S.C. § 1677d.  While SolarWorld argues that Commerce
failed to undertake the inquiry as to whether self-initiation
was warranted pursuant to 19 U.S.C. § 1677d, see Pl.'s Br.,
Consol. Ct. No. 13-00009, ECF Nos. 78 & 79, at 28 (quoting
Allegheny Ludlum Corp. v. United States, 25 CIT 816, 821 (2001)
(not reported in the Federal Supplement) ("Since the plain
language of [19 U.S.C. § 1677d] and [19 C.F.R. § 351.311] only
require Commerce to investigate where there is a practice that
'appears to be' or 'appears to provide' a countervailable
subsidy, it follows that Commerce must first determine whether
that threshold is met.") (SolarWorld's alteration omitted)),
Commerce in fact acknowledged this possibility, Post-Prelim.
Determination, ECF No. 44-6 at Tab 23, at 16, but found that
insufficient time remained in this complex proceeding to act on
it, see id.

[114] Post-Prelim. Determination, ECF No. 44-6 at Tab 23, at 16
(citing 19 C.F.R. § 351.311(c)).

stated that the agency's "rejection of [SolarWorld]'s arguments

is in no way a comment on the merits of those allegations, which

[SolarWorld] may resubmit at the outset of any administrative

review."[115]  And in fact Commerce went on to investigate (and

ultimately countervail for) both of these subsidy allegations in

the subsequent first administrative review.[116]

---

[115] Id.; see 19 C.F.R. § 351.311(c)(2) ("If [Commerce] concludes
that insufficient time remains before the scheduled date for the
final determination . . . to examine the practice, subsidy, or
subsidy program [described by 19 U.S.C. § 1677d and 19 C.F.R.
§ 351.311(b)], [Commerce] will . . . defer consideration of the
newly discovered practice, subsidy, or subsidy program until a
subsequent administrative review, if any.").

[116] See Def.'s Br., ECF No. 43, at 22, 39 (citing Issues
& Decision Mem., [Solar Cells], Whether or Not Assembled into
Modules, from [China], C-570-980, ARP 3/12-12/12 (July 7, 2015)
(adopted in 80 Fed. Reg. 41,003, 41,004 (Dep't Commerce July 14,
2015) (final results of countervailing duty administrative
review; 2012)) at 21-23 (determining the provision of aluminum
extrusions for less than adequate remuneration to be
countervailable), 23-25 (determining the provision of "solar
glass" for less than adequate remuneration to be
countervailable)).  Responding to the court's inquiry as to
whether, given retroactive duty assessment, Commerce's
determinations to investigate and countervail for these
subsidies in the subsequent administrative review mooted the
issues presented here, see Order, Sept. 25, 2015, ECF No. 45,
the parties explained that the controversy presented is not
mooted because, "in the first administrative review, in which
review requests for various companies were rescinded, the
rescinded companies were assessed the rate calculated in the
investigation." Def.'s Suppl. Br., ECF No. 51, at 2 (citing
[Solar Cells], Whether or Not Assembled into Modules, from
[China], 80 Fed. Reg. 8597 (Dep't Commerce Feb. 18, 2015)
(notice of correction to preliminary results of countervailing
duty administrative review; 2012 and partial rescission of
countervailing duty administrative review));
see also Pl. [SolarWorld]'s Suppl. Br., ECF No. 52, at 2
                                         (footnote continued)

As discussed above, Commerce's determinations that SolarWorld's latest timely aluminum extrusions and rolled glass allegations failed to satisfy the requirements for petition-based initiation are supported by substantial evidence, and the agency did not abuse its discretion in concluding that insufficient time remained in this proceeding to permit SolarWorld to re-file the allegations.[117]  The agency is not mandated to unreasonably over-extend itself when faced with limited resources.  It follows that Commerce also did not abuse its discretion in concluding that insufficient time remained in this proceeding to self-initiate the investigations.[118]  As this Court has previously explained, "a petitioner who does not timely make a [legally complete and sufficient] subsidy allegation, even though it could, risks having Commerce defer its investigation to a subsequent administrative review."[119]

---

(listing specific respondents for whom this is the case).

[117] *Supra* Discussion Sections I & II.A.

[118] See Post-Prelim. Determination, ECF No. 44-6 at Tab 23, at 16 (relying on 19 C.F.R. § 351.311(c)) (unchanged in the Final Determination, 77 Fed. Reg. 63,788; I&D Mem. cmt. 10 at 36-38).

[119] Allegheny Ludlum Corp. v. United States, 24 CIT 452, 461 n. 12, 112 F. Supp. 2d 1141, 1151 n. 12 (2000) (explaining that 19 C.F.R. § 251.311(c)(2) "allow[s] Commerce to 'defer consideration of the newly discovered practice, subsidy, or subsidy program until a subsequent administrative review' if Commerce 'concludes that insufficient time remains before the scheduled date for the final determination'" (quoting 19 C.F.R. § 251.311(c)(2))); see also Bethlehem Steel Corp. v. United

(footnote continued)

That is exactly what happened here.

Accordingly, because Commerce's decisions to defer consideration of SolarWorld's untimely aluminum extrusions and rolled glass subsidy allegations until the next administrative review were based on factual findings that are supported by substantial evidence, were not an abuse of the agency's discretion, and were otherwise free of any legal error, these determinations are sustained.

### CONCLUSION

For all of the foregoing reasons, Commerce's <u>Final Determination</u> is affirmed.  Judgment will issue accordingly.


                                   /s/ Donald C. Pogue
                              Donald C. Pogue, Senior Judge

Dated: December 11, 2015
       New York, NY

---

<u>States</u>, 25 CIT 307, 313, 140 F. Supp. 2d 1354, 1361 (2001) (recognizing that "when Commerce is faced with . . . extraordinarily complex subsidy allegations it may lack the resources or the time necessary to investigate the new allegations") (quotation marks omitted); <u>3d Postponement</u>, 77 Fed. Reg. at 10,478 (determining that "the investigation [was] extraordinarily complicated," even without taking into account the five new subsidy allegations SolarWorld submitted on the day of the last extended deadline for new subsidy submissions, or its subsequent attempts to re-file the aluminum extrusions and glass allegations).